IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRICE D. NAGY, | |
| Plaintiff, | 4:18-CV-3093 |
| vs. | |
| ALEX M. HUNTLEY, Individually and in his official capacity, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the defendants' motion to dismiss (filing 3) Brice Nagy's 42 U.S.C. § 1983 claims against them. The Court will grant that motion and remand Nagy's remaining state-law claim to state court.

BACKGROUND

Nagy's claim arises out of a search performed by law enforcement at his residence. *See* filing 1-1. Nagy was a resident of Oxford, Nebraska, a village in Furnas County. Filing 1-1 at 1. The defendants are Furnas County itself, Furnas County Sheriff Kurt Kapperman, and Furnas County Deputy Sheriffs Alex Huntley, Seth Gustafson, and Nick Schleich. Filing 1-1 at 1.

According to Nagy, the sequence of events culminating in the allegedly unlawful search of his home began when his relationship with a woman living in Furnas County "ended badly." Filing 1-1 at 2. Some years later, Nagy's ex-girlfriend began seeing Deputy Schleich. Filing 1-1 at 2. This, according to Nagy, motivated Deputy Schleich to harass Nagy, threatening to "get" him. Filing 1-1 at 2. This allegedly included harassment such as following Nagy around Oxford, and on one occasion parking his patrol vehicle outside Nagy's home and "honk[ing] his horn for a period of time." Filing 1-1 at 2.

The search which forms the basis for Nagy's claims was executed on February 3, 2018, pursuant to a search warrant issued the same day which commanded law enforcement to search for evidence of underage drinking. Filing 1-1 at 2, 8. The warrant was issued pursuant to an affidavit and application completed by Deputy Schleich, but the affidavit contains several errors. *See* filing 1-1 at 7.

To begin with, the affidavit begins with, "COMES NOW, Deputy Alex M. Huntley . . . ," although the body of the affidavit and the signature (which was notarized) all clearly identify the affiant as Deputy Schleich. The notarization was erroneously dated November 3, 2017. Filing 1-1 at 7. And the affidavit identified the residence as "514 Ogden Street" in Oxford, but Nagy alleges that he actually lived at 506 Ogden Street, and that's where the search was performed. Filing 1-1 at 3, 7.

Nagy also questions the sufficiency of the affidavit to establish probable cause. Deputy Schleich averred that while driving down Ogden Street, he had seen four vehicles and five males standing in the backyard of the residence. Filing 1-1 at 7. He drove down the alley behind the residence and saw a minor he knew carrying a case of beer up to the house.[1] Filing 1-1 at 7. The minor, Deputy Schleich averred, quickly went into the house after he saw police. Filing 1-1 at 7. Deputy Schleich also reported seeing another minor he knew holding a case of beer bottles in his left hand and drinking out of a beer bottle he was holding in his right hand. Filing 1-1 at 7. And he saw another minor standing outside with them. Filing 1-1 at 7. Finally, driving around the block, Deputy Schleich reported seeing Nagy and an unknown male who appeared to be a minor standing outside on the porch. Filing 1-1 at 7.

---

[1] A "minor" for these purposes is anyone under 21 years of age. Neb. Rev. Stat. § 53-103.23.

Deputy Schleich contacted Deputy Gustafson, who advised him to have another deputy watch the residence. Filing 1-1 at 7. Deputy Schleich applied for a "no knock anytime Search Warrant." Filing 1-1 at 7. The Furnas County Court, however, issued a warrant that could be served "daytime or nighttime," but did not authorize a no-knock entry. Filing 1-1 at 8. The warrant was, pursuant to the application, issued for "514 Ogden Street." Filing 1-1 at 8.

Nagy alleges that the warrant was executed at 506 Ogden Street by Deputies Schleich and Gustafson at about 10:00 p.m. on February 3, which was about 4 hours after the observations set forth in the affidavit. Filing 1-1 at 4. Nagy alleges they broke down the door. Filing 1-1 at 5. But nothing was seized as a result of the search. Filing 1-1 at 9. Nagy alleges that by then, no one was home. Filing 1-1 at 4. Nagy also alleges that the people seen "at 506 Ogden Street, Oxford, Nebraska on February 3, 2018 at approximately 6:00 who were carrying or consuming alcoholic beverages in the backyard of said residence were male individuals over 30 years of age and no reasonable law enforcement officer could have mistaken 30 year old males for minors." Filing 1-1 at 5.

Nagy sued the defendants in state court in Furnas County, and they removed the case to this Court. *See* filing 1. Nagy's complaint asserts two claims for relief. First, his § 1983 claim is premised on an allegedly unlawful search and a purported due process right to be "free from harassment."[2] Second, he asserts a state-law claim pursuant to Neb. Rev. Stat. § 29-411, which provides a remedy for property damage resulting from forced entry in

---

[2] Nagy also refers to Neb. Const. art. I, § 7—the state equivalent to the Fourth Amendment. But Nebraska law does not permit a direct cause of action for violation of a state constitutional provision. *See McKenna v. Julian*, 763 N.W.2d 384, 391 (Neb. 2009). And in any event, art. I, § 7 has not been construed to provide greater rights than those afforded by the Fourth Amendment. *See State v. Smith*, 782 N.W.2d 913, 920 (Neb. 2010).

the execution of a search warrant. *See id.* The defendants move to dismiss the § 1983 claim pursuant to Fed. R. Civ. P. 12(b)(6). Filing 3.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even

if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

## DISCUSSION

The defendants' first argument is that the complaint fails to state a § 1983 claim against Furnas County or Sheriff Kapperman, because the complaint pleads grounds for neither a policy-or-custom claim against Furnas County, nor for a supervisory liability claim against Sheriff Kapperman. *See Brewington v. Keener*, 902 F.3d 796, 800-03 (8th Cir. 2018). Nagy concedes the point. Filing 5 at 9. Accordingly, Nagy's § 1983 claims will be dismissed as to Furnas County and Sheriff Kapperman on that basis. So, too, will the § 1983 claims against all the defendants in their official capacities. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017).

The defendants' primary argument is that Deputies Huntley, Gustafson, and Schleich are entitled to qualified immunity. Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson,* 555 U.S. at 231. It gives government officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. *Parker,* 777 F.3d at 979-80.

In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips,* 664 F.3d 232, 236 (8th Cir. 2011); *see Parker,* 777 F.3d at 980. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Messerschmidt,* 565 U.S. at 546; *Pearson,* 555 U.S. at 244. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson,* 555 U.S. at 231.

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Parker,* 777 F.3d at 980. Clearly established law is not defined at a high level of generality, since doing so avoids the crucial

question whether the official acted reasonably in the particular circumstances that he or she faced. *Id.*; s*ee Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008). It is unnecessary to have a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Parker*, 777 F.3d at 980.

An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment. *Pearson*, 555 U.S. at 243-44. And "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted). Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts." *Id.*

Furthermore, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 565 U.S. at 546. While there is an exception allowing suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue, "the threshold for establishing this exception is a high one, and it should be." *Id.* at 547. "It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986); *accord Messerschmidt*, 132 S. Ct. at 1245.

The defendants contend that Deputy Schleich's affidavit was sufficient to establish probable cause to search for evidence of minors in possession of alcohol, and that the clerical errors in the affidavit do not invalidate the warrant. Nagy contends, first, that the mistakes in the affidavit—when read together—mean that no reasonable law enforcement officer would use it to obtain a warrant. *See* filing 5 at 5-6. But caselaw suggests otherwise: a minor clerical error does not invalidate a search warrant. *United States v. Hudspeth*, 525 F.3d 667, 675 n.3 (8th Cir. 2008).

For instance, in *Lyons v. Robinson*, the Eighth Circuit held that a warrant was sufficient, even though it incorrectly listed the address to be searched because the address had been incorrect in the applying officer's affidavit. 783 F.2d 737, 738. The Court of Appeals found that it was "clear that in the circumstances the error in the warrant was not misleading or confusing." *Id.*; *see also United States v. Pruett*, 501 F.3d 976, 981-82 (8th Cir. 2007). It is true that in *Lyons*, unlike this case, the warrant provided a physical description of the premises. But the Court of Appeals also explained that—like this case—"where the same officer both applied for and executed the warrant, a mistaken search is unlikely." *Id.* Similarly, in *United States v. Thomas*, the Eighth Circuit held that the searching officers could rely on a warrant in good faith, despite an incorrect address and no other description of the location, because an officer with personal knowledge of the location both obtained and executed the warrant, and the location was surveilled while the warrant was secured. 263 F.3d 805, 808-09 (8th Cir. 2001).

Additionally, in *United States v. White*, the Eighth Circuit forgave a mistaken date on a warrant application form, explaining that

> the inconsistency between the date on the warrant-application form and the date on the search warrant does not eliminate

probable cause. The warrant described the premises and items to be seized with particularity. [The averring officer] testified that it was common practice for him to re-use application forms when applying for a search warrant. [He] failed to change the date typed onto his preprinted application form.

356 F.3d 865, 869 (8th Cir. 2004).

In this case, the affidavit and application were obviously sloppy. But innocent mistakes or negligence alone are insufficient to void a warrant. *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009). And the issue before the Court isn't the sufficiency of the affidavit or the warrant: it's whether the officers who executed the search warrant violated clearly established law by doing so. In this case, even if there were a constitutional violation caused by clerical errors in the affidavit (a questionable conclusion to start with), the officers did not violate clearly established law. Specifically, the incorrect address in the affidavit and warrant was largely inconsequential because the warrant was executed by the same officer who applied for it. The mistaken date at the bottom of the affidavit—and the mistaken affiant's name at the top—were also clearly clerical errors, and it was evident from the body of the affidavit both who was applying for the warrant and when his observations had been made. On balance, given caselaw excusing similar clerical errors, the Court cannot say that the resulting warrant should have been seen as defective under clearly established law.

Nagy also argues that the affidavit was insufficient because under Nebraska law, a minor may possess alcohol in his own home. Filing 5 at 6.

That's true. *See* Neb. Rev. Stat. § 53-180.02. So, Nagy contends simply seeing minors possessing liquor at a home isn't evidence of a crime. Filing 5 at 6.³

But an officer need not be able to prove criminal activity beyond a reasonable doubt to get a warrant—rather, "[a] supporting affidavit establishes probable cause to issue a search warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Davis*, 867 F.3d 1021, 1027 (8th Cir. 2017). The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit. *Id*. And the Eighth Circuit has found probable cause for a search when an officer observed a minor he recognized drinking beer inside a home. *Radloff v. City of Oelwein, Iowa*, 380 F.3d 344, 348 (8th Cir. 2004).⁴

---

³ Nagy suggested in his complaint that the people Deputy Schleich saw weren't actually minors, and that "no reasonable law enforcement officer could have mistaken 30 year old males for minors." Filing 1-1 at 5. But Nagy seems to have abandoned that contention in his briefing. *See* filing 5. In any event, the Fourth Amendment requires a warrant application to be truthful "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Mueller v. Tinkham*, 162 F.3d 999, 1003 (8th Cir. 1998); *see Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). And Nagy didn't specifically allege that the affidavit included a false statement "knowingly and intentionally, or with reckless disregard for the truth," *see Franks*, 438 U.S. at 155, or that Schleich lied, *see Moody v. St. Charles Cty.*, 23 F.3d 1410, 1411-12 (8th Cir. 1994). In fact, Schleich's affidavit identified several individuals by name and provided their dates of birth. *See* filing 4 at 2-3. If there was a mistake, it was misidentification, and Nagy hasn't alleged enough to overcome qualified immunity for such a mistake. *Cf. Hill v. Scott*, 349 F.3d 1068, 1072-73 (8th Cir. 2003).

⁴ Iowa law, too, permits a minor to possess liquor in his own home. *See* Iowa Code § 123.47(3).

Given that, it would not have been "entirely unreasonable" for an officer to believe, in the particular circumstances of this case, that there was probable cause for a search. *See Messerschmidt,* 565 U.S. at 549. The officers' judgment that the warrant was supported by probable cause may have been mistaken, but it was not plainly incompetent—"it cannot be said that no officer of reasonable competence would have requested the warrant." *Id.* (quotation omitted). As the *Messerschmidt* Court concluded:

> The question in this case is not whether the magistrate erred in believing there was sufficient probable cause to support the scope of the warrant he issued. It is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error. The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions. Even if the warrant in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered plainly incompetent for concluding otherwise.

*Id.* at 556 (quotation omitted). The same is true here.[5]

---

[5] Nagy also suggests, later in his brief, that the warrant was deficient because it didn't describe the items to be seized. Filing 5 at 14, 17. A warrant must particularly describe the persons or things to be seized. U.S. Const. amend. IV. But the particularity standard is one of practical accuracy rather than of hypertechnicality, and the degree of specificity required will depend on the circumstances of the case and on the type of items involved. *United States v. Sigillito,* 759 F.3d 913, 923 (8th Cir. 2014). Here, the warrant directed seizure of "any evidence of minors in possession or consumption of Alcoholic beverages." Filing 1-1 at 8.

Next, Nagy argues that even if reliance on the warrant was proper, Deputies Schleich and Gustafson violated his rights by breaking into his home, because they didn't have a no-knock warrant. Filing 5 at 6. The alternative to a no-knock warrant, however, is that absent exigent circumstances, officers must knock and announce their presence before breaking into a dwelling. *See Wilson v. Arkansas*, 514 U.S. 927, 931-37 (1995); *see also Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). But if no one answers, the Fourth Amendment doesn't require officers to give up and walk away—rather, they may force entry under circumstances that constitute constructive or reasonably inferred refusal, such as a failure to answer. *See United States v. Vesey*, 338 F.3d 913, 915 (8th Cir. 2003); *State v. Kelley*, 658 N.W.2d 279, 288 (Neb. 2003); *see also United States v. Jackson*, 114 F. App'x 764, 765 (8th Cir. 2004). And the Fourth Amendment does not require notice to an absent homeowner before execution of a search for which a warrant has issued. *United States v. DeBuse*, 289 F.3d 1072, 1075 (8th Cir. 2002).

In this case, Nagy expressly alleges that no one was home when the warrant was executed. Filing 1-1 at 4. So, it's not really clear what constitutional violation he's claiming—he simply asserts that "[w]ithout exigent circumstances and without a 'no-knock' warrant, the entry into the Plaintiff's residence was unreasonable and in violation of the Fourth Amendment." Filing 5 at 8, 13. But that conclusion seems to rest on the

---

Similar language has been held sufficiently particular. *See id.* at 924; *United States v. Mosby*, 101 F.3d 1278, 1281-82 (8th Cir. 1996); *United States v. Peters*, 92 F.3d 768, 770 (8th Cir. 1996); *United States v. Gruber*, 994 F. Supp. 1026, 1036 (N.D. Iowa 1998), *aff'd sub nom. United States v. Fairchild*, 189 F.3d 769 (8th Cir. 1999).

assumption that forced entry is unlawful without a no-knock warrant or exigent circumstances, and as explained above, that's just not the law.[6]

Next, Nagy contends that Deputies Schleich and Gustafson should not be granted what he calls "qualified good-faith immunity" because, according to Nagy, Schleich's conduct was "based upon vindictiveness, retaliation or evil motive." Filing 5 at 11. He argues that

> [i]f Schleich actually saw the minors consuming or possessing alcohol, the normal procedure would be to contact the minor, determine if they were minors, determine if the residence at which they were possessing or consuming alcohol was not their primary place of residence and then issue a citation in lieu of arrest. No search warrant would be required to investigate this case. The only possible motive for obtaining a search warrant would be to further harass the Plaintiff by conducting [a] search of his residence.

Filing 5 at 11-12. But that's speculative—and, it's contrary to the well-established principle that an officer's subjective motivation is irrelevant. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006); *United States v. Conrad*, 828 F.3d 1009, 1011 (8th Cir. 2016). Rather, an action is "reasonable" under the Fourth Amendment regardless of the individual officer's state of mind as long as the circumstances, viewed objectively, justify the action. *Id*.

---

[6] Nagy also suggests that the entry was unreasonable *because* no one was home—so, he contends, there wouldn't be evidence of minors possessing alcohol for officers to find. Filing 5 at 16-17. That's not necessarily true. *See State v. Laue*, 402 N.W.2d 313, 315 (Neb. 1987). And it's also wholly unclear how officers executing a search warrant are expected to know for sure that no one's home unless they actually enter the home.

Nor do Nagy's other allegations of harassment suffice to state a claim for violation of his right to due process.[7] It is possible to establish a due process violation absent physical force because such violations can be based on mental coercion. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 797 (8th Cir. 1998). But "[g]enerally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997)

> The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest. We have held that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right.

*Id.* (cleaned up); *see Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 724-25 (D. Minn. 2015), *aff'd,* 652 F. App'x 479 (8th Cir. 2016); *Der v. Connolly*, 825 F. Supp. 2d 991, 998-99 (D. Minn. 2010); *Busch v. City of Anthon, Iowa*, 173 F. Supp. 2d 876, 887-88 (N.D. Iowa 2001).

---

[7] It is worth noting that where a constitutional amendment provides an explicit textual source of protection against certain government misconduct, that amendment is the guide for analysis of the claim rather than the generalized notion of substantive due process. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, the search of Nagy's home is subject to a Fourth Amendment analysis.

"The theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (cleaned up). This is not such a case. Nagy does not allege, for instance, that officers threatened to employ deadly force for no legitimate reason. *See Hawkins v. Holloway*, 316 F.3d 777, 787 (8th Cir. 2003). Instead, he alleges at most a pattern of abrasive or unprofessional conduct that is insufficient to support a constitutional violation. *See id.* at 786.

In sum, Nagy's complaint doesn't allege facts sufficient to show that, even if his constitutional rights were violated, that those rights were clearly established. Clearly established law should not be defined at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Id.* And while it's unnecessary to have a case directly on point, *see Parker*, 777 F.3d at 980, it's worth noting that Nagy's brief doesn't cite a single case factually apposite to this one. Accordingly, Deputies Huntley, Gustafson, and Schleich are entitled to qualified immunity.

Nagy's remaining claim arises under state law. The Court *may* continue to exercise supplemental jurisdiction over that claim. *See* 28 U.S.C. § 1367(a) and (c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). But the Court can also remand that claim to state court. *See* § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). The Court has "broad discretion in determining whether to exercise supplemental jurisdiction[,]" *Crest Const. II, Inv. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011), and, in fact, where "resolution of the remaining claims depends solely on a determination of state law, the Court *should* decline to exercise jurisdiction." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (emphasis

supplied) (quotation and citations omitted).

In making that determination, the Court must consider factors such as judicial economy, convenience, fairness, and comity. *Id.*; *see Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016). But "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilson*, 821 F.3d at 971; *Williams v. Hobbs*, 658 F.3d 842, 853 (8th Cir. 2011) (cleaned up). The Court finds no factor that distinguishes this case from the usual case. *See Wilson*, 821 F.3d at 971. Accordingly, the Court will decline supplemental jurisdiction, and will remand Nagy's state-law claim.

IT IS ORDERED:

1. The defendants' motion to dismiss (filing 3) is granted.

2. Nagy's § 1983 claims are dismissed.

3. This case is remanded to the District Court for Furnas County, Nebraska.

4. A separate judgment will be entered.

Dated this 22nd day of October, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge